**Donald L. HOESLY, Plaintiff–Appellant,**

v.

**CHICAGO CENTRAL & PACIFIC RAILROAD COMPANY, Defendant–Appellee.**

No. 97–3920.

United States Court of Appeals, Seventh Circuit.

Argued June 5, 1998.

Decided Aug. 20, 1998.

Robert M. Fagan (argued), Law Offices of Robert M. Fagan, Freeport, IL, Francis X. Mahoney, Mahoney & Hausser, Freeport, IL, for Plaintiff–Appellant.

Eugene G. Doherty (argued), Holmstrom & Kennedy, Rockford, IL, for Defendant–Appellee.

Before POSNER, Chief Judge, and BAUER and KANNE, Circuit Judges.

KANNE, Circuit Judge.

The Chicago, Central & Pacific Railroad ("Chicago Central") owns railroad tracks that run through a parking lot in Lena, Illinois. In September 1994, Chicago Central was repairing a portion of the tracks that intersects a pedestrian crosswalk. Chicago Central removed the blacktop surface of the crosswalk and the gravel and roadbed of the tracks, leaving piles of dirt and gravel on the crosswalk. The crosswalk remained in this condition for about a week. On the morning of September 24, 1994, the crosswalk was damp from a rainfall the night before. Donald Hoesly attempted to cross the crosswalk and tripped on a pile of gravel. He fell onto the tracks, injuring himself.

Hoesly brought this diversity suit against Chicago Central alleging common law negligence and negligence based on a violation of Illinois Commerce Commission regulations. The district court granted summary judgment to Chicago Central, determining that any danger presented by the piles of gravel was open and obvious, thus relieving Chicago Central of a duty to protect Hoesly from them. Hoesly appeals.

We review a district court's decision to grant summary judgment *de novo*, drawing our own conclusions of law and fact from the record before us. *See Thiele v. Norfolk & Western Ry. Co.*, 68 F.3d 179, 181 (7th Cir. 1995). Summary judgment is proper where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). In determining whether a genuine issue of material fact exists, courts must construe all facts in the light most favorable to the non-moving party and draw all reasonable and justifiable inferences in favor of that party. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). However, neither "the mere existence of *some* alleged factual dispute between the parties," *Anderson*, 477 U.S. at 247, 106 S.Ct. 2505, nor the existence of "some metaphysical doubt as to the material facts," *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986), is sufficient to defeat a motion for summary judgment.

■ The Illinois Public Utilities Act calls for the promulgation of regulations concerning railroad crossings and provides for a cause of action for damages caused by the violation of those regulations:

In case any public utility shall do, cause to be done or permit to be done any act ... or shall omit to do any act, matter or thing required to be done either by any provisions of this Act or any rule, regulation, order or decision of the Commission, issued under authority of this Act, the public utility *shall be liable* to the persons or corporations affected thereby for all loss, damages or injury caused thereby or resulting therefrom....

220 ILCS 5/5–201 (emphasis added). Hoesly claims that Chicago Central violated two of those regulations, Ill. Admin. Code tit. 92, § 1535.203 and § 1535.206, by leaving gravel near the rails. He argues that under the Public Utilities Act, the violation of these regulations establishes liability. While there is some question as to whether this purely pedestrian crosswalk is governed by the regulations mentioned, we assume that it is because while there may have been a violation of these regulations, it is irrelevant to our inquiry. A cause of action based on a violation of these regulations is susceptible to the limits of Illinois common law tort liability, including the rule of open and obvious dangers. *See In re Illinois Bell Switching Station Litig.*, 161 Ill.2d 233, 204 Ill.Dec. 216, 641 N.E.2d 440, 444 (1994); *Barthel v. Illinois Cent. Gulf R.R.*, 74 Ill.2d 213, 23 Ill.Dec. 529, 384 N.E.2d 323, 326 (1979).

The Illinois Supreme Court has already held that a cause of action based on regulations like the ones at hand is vulnerable to the defense of contributory negligence. In *Barthel*, 23 Ill.Dec. 529, 384 N.E.2d at 323, a car collided with a moving train at a grade crossing. The plaintiff sued the railroad alleging negligence based on a violation of Illinois statutes and regulations relating to grade crossings. *See id.* at 325–26. The plaintiff argued that violation of the statutes and regulations was negligence per se without regard to any contributory negligence. *See id.* at 326. The Illinois Supreme Court decided that to impose liability without regard to contributory negligence would be to impose strict liability, which was inappropriate without a plain intent to do so on the part of the legislature. *See id.* at 327. The Public Utilities Act is "in derogation of the common law," and as such the court insisted on applying common law tort limits unless it plainly appeared that the legislature intended to abrogate those limits. *Id.* at 327. In *Barthel*, it did not appear that such was the intent of the legislature. Strict liability is reserved for those instances in which certain classes of people (e.g., children, miners, intoxicated people) are unable to protect themselves. *See id.* The court held that the Public Utilities Act and the regulations at issue were susceptible to the defenses of contributory negligence.

The *Barthel* court also noted that the regulations at issue did not establish a standard of care different from that of common law tort. The regulations call for crossings to be "safe as to persons and property" and "in a good state of efficiency." *Id.* at 328. The court thought that type of vague regulation different from regulations that require bells or whistles for a certain length of time or grades of so many degrees incline. Because the legislature did not set out a new standard of care, the court thought the legislature intended that the accoutrements of common law tort would also apply to a cause of action under the Public Utilities Act. *See id.*

Likewise, in *In re Illinois Bell Switching Station Litigation*, 204 Ill.Dec. 216, 641 N.E.2d at 444, customers of Illinois Bell sued for economic damages after a disruption in telephone service of about a month. Economic damages are not recoverable in common law tort in Illinois. The Illinois Supreme Court held that even though the Public Utilities Act provides that a public utility "shall be liable ... for all loss" caused by a violation of a regulation, the legislature did not intend the courts to ignore the common law bar to recovery of economic damages. *See id.* at 443 (quoting 220 ILCS 5/5–201 (1992)). "Section 5–201's provision that allows recovery for 'all loss, damages or injury' permits recovery of all losses and damages *authorized under the common law*," which does not include economic damages. *Id.* at 444 (emphasis added).

■ It is our task to predict how the Illinois Supreme Court would decide this case. We think that the Illinois Supreme Court would agree that a cause of action

under the Public Utilities Act is susceptible to the open and obvious doctrine. The Illinois Supreme Court has already held the Public Utilities Act to be limited by the defense of contributory negligence and the bar on economic damages, stating broadly that the Public Utilities Act provides for damages "authorized under the common law." *See id.* We see no reason not to apply the similar common law limit of the open and obvious doctrine.

The Illinois Supreme Court recently revisited the open and obvious doctrine in depth and held again that "Illinois law holds that persons who own, occupy, or control and maintain land are not ordinarily required to foresee and protect against injuries from potentially dangerous conditions that are open and obvious." *Bucheleres v. Chicago Park Dist.*, 171 Ill.2d 435, 216 Ill.Dec. 568, 665 N.E.2d 826, 832 (1996); *see also Ward v. K mart Corp.*, 136 Ill.2d 132, 143 Ill.Dec. 288, 554 N.E.2d 223, 227 (1990). That is, landowners owe no duty to protect people from open and obvious dangers. This is so because "[t]he open and obvious nature of the condition itself gives caution and therefore the risk of harm is considered slight; people are expected to appreciate and avoid obvious risks." *Bucheleres*, 216 Ill.Dec. 568, 665 N.E.2d at 832.

The parties agree that gravel near the rails posed an open and obvious danger; therefore, Chicago Central owed no duty to protect Hoesly from the piles of gravel. And "where there is no duty there is no liability." *Id.*

For the foregoing reasons, the judgment of the district court is AFFIRMED.